UNITED STATES of America, Appellee,

v.

Christian Modest NICHOLAS,
Defendant, Appellant.

No. 97–1733.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1997.

Decided Jan. 9, 1998.

J. Martin Richey, of the Federal Defender Office, Brockton, MA, for appellant.

Antoinette E.M. Leoney, Assistant U.S. Attorney, Boston, MA, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Federal criminal sentences under the Guidelines are often increased where the defendant had prior state court findings which amount to convictions or admissions of guilt. This defendant in 1997 pled guilty to six bank robberies, federal crimes, and had in 1993 admitted to sufficient facts [1] on state charges of larceny and forgery, a procedure the state labeled a "continuance without a finding." The rub is that he did so under an archaic

---

**1.** Under Massachusetts law, "[an] 'admission to sufficient facts' or 'submission to a finding' means an admission to facts sufficient to warrant a finding of guilty." *Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334, 337 (1982).

Massachusetts criminal procedure, abolished as of January 1, 1994, which gave defendants a trial de novo after an initial criminal proceeding, such as a continuance without a finding, in the state district court.

Defendant Nicholas, an emigre from St. Lucia, argues from this archaic system that this prior state court finding may not be counted against him. Because Nicholas in 1993 signed a *Duquette* waiver of his right to appeal from the state court finding and because the federal sentencing record, particularly the presentence report (PSR), adequately established the fact and regularity of this waiver and that the state court found (and Nicholas admitted) sufficient facts to warrant a finding of guilty, we find no error and uphold the increased sentence imposed by the federal sentencing judge.

The precise issue is whether the district court erred in revising upward the defendant's criminal history category by counting the prior continuance without a finding in Massachusetts state court. If the court so erred, the sentencing range applicable to Nicholas would be 51 to 63 months instead of 57 to 71 months. The district court sentenced Nicholas to 57 months (4 years and 9 months) of incarceration, the low end of the range.

## I.

On March 11, 1997, Christian M. Nicholas pled guilty to six separate bank robberies, dating from September of 1994 through December of 1996, in violation of 18 U.S.C. § 2113(a).

The court adopted the PSR calculation of the total offense level as 24 and the placement of Nicholas in criminal history category II, under U.S.S.G. § 4A1.1(c). Nicholas received one criminal history point under

§ 4A1.2(f) for the state court case that was continued without a finding after his admission to sufficient facts in the first tier of the old Massachusetts de novo trial system.[2] In addition, two points were added pursuant to U.S.S.G. § 4A1.1(d) (offense committed while "under a criminal justice sentence") because at the time of the federal offenses Nicholas was under supervision from that state finding. Because Nicholas had three points, he fell into criminal history category II. If the continuance without a finding may not be counted, as Nicholas argues, then neither may the two additional points, and Nicholas belongs in category I.

Nicholas was sentenced in May of 1997. Nicholas argues that the district court should not have included the Massachusetts continuance in its calculation and that he properly belongs in criminal history category I.

## II.

■ We review de novo a district court's legal interpretation of the Sentencing Guidelines. *See United States v. Damon*, 127 F.3d 139, 141 (1st Cir.1997).

■ Under Guidelines § 4A1.2(f), which concerns "diversions from the judicial process," there is different treatment of continuances depending on whether the continuance involves a finding or admission of guilt:

> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.[3]

The inquiry as to whether Nicholas's 1993 state finding was a "finding or admission of

2. Nicholas was arraigned on June 3, 1993 in the Brookline District Court on two counts of larceny of property over $250, and one count of forgery. He admitted to sufficient facts in the first tier bench session on August 2, 1993, and the case was continued without a finding. Nicholas was placed under supervision and ordered to pay restitution as a condition of the continuance.

3. The attached commentary further explains:

> Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency.

U.S.S.G. § 4A1.2(f) commentary at n. 9.

guilt" raises several levels of issues. The first level has, at least in theory, to do with the archaic Massachusetts trial de novo system. Under that system, a defendant could have an initial trial or even a continuance without a finding and then, if he did not like the result, have a second trial de novo, with no consequences from the first trial (other than the discovery it gave defendants).[4] The exercise of the right to trial de novo vacates the prior judgment. *See Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334, 342 (1982). That being so, the theoretical issue is how a federal court could count as a finding or admission of guilt an outcome which, in effect, was not final because defendant could exercise his right to a trial de novo, or perhaps was not a reliable indicator of actual guilt, because the consequences of the admissions were so small.

The answer is that Massachusetts, in *Duquette*, recognized that a defendant could waive his rights to a jury trial at the second tier level of the trial de novo system. That waiver would be enforced, and the defendant's admission would be tantamount to a guilty plea, provided certain procedural safeguards were met. The safeguards, enumerated in *Duquette*, are that the defendant should sign a written waiver, the facts should be formalized in written stipulations, and the judge should conduct a colloquy with the defendant to ensure the defendant understands the consequences of the waiver. *See id.* at 342. If those safeguards were met, then the admission to sufficient facts is treated as final and as a guilty plea.

▮ This court, in *United States v. Roberts*, 39 F.3d 10, 13 (1st Cir.1994), held that continuances without a finding at the second tier of the Massachusetts de novo system are countable diversionary dispositions under U.S.S.G. § 4A1.2(f) because "[w]here such an admission to sufficient facts occurs and is accepted at the second tier ... the defendant has in substance admitted to his guilt." Thus in *Roberts*, we held that a second tier admission to sufficient facts is almost indistinguishable from a guilty plea, and so could be counted as a finding or admission of guilt for federal sentencing purposes. *Roberts* involved an admission at the first tier level, and we remanded for further development of the facts as to what happened at that level or what were the regular procedures at that level.

Not surprisingly, in the aftermath of the *Duquette* decision, a form known as a "*Duquette* waiver" came to be used in the state system. By the time of the defendant's admission to sufficient facts in 1993, Massachusetts case law had clearly established that when a defendant signs a *Duquette* waiver at the first tier, the second tier formalities prescribed by *Duquette* apply. *See, e.g., Commonwealth v. De La Zerda*, 416 Mass. 247, 619 N.E.2d 617, 618 n. 1 (1993); *Commonwealth v. Mele*, 20 Mass.App.Ct. 958, 480 N.E.2d 647, 648 (1985) ("[A] District Court judge at the first tier must, if the defendant does not claim an appeal, provide the second tier safeguards of *Duquette*.").

Nicholas did sign a *Duquette* waiver at the first tier.[5] He thus had a continuance without a finding after an admission to sufficient facts at the first tier level and executed a *Duquette* waiver evidencing that procedural safeguards had been followed. He asks us to overrule *Roberts* or at least to fashion a rule that *Roberts* cannot apply to the first tier

---

4. Under the Massachusetts District Court two tier system, a defendant was entitled to a jury-of-six trial in the first instance. The defendant could waive this right and elect to have a bench trial instead. Defendants who elected a bench trial could appeal the outcome to the "second tier," where they would receive a de novo jury-of-six trial, unless they again elected a bench trial before a second judge. Defendants could dispose of the case at either tier through a "continuance without a finding upon admission to sufficient facts." *See Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334, 341 (Mass.1982). When a case was continued without a finding, the court imposed certain conditions (*e.g.*, pay-ment of restitution) which the defendant was obliged to meet, and if he met them the case was dismissed at the end of the continuance period.

5. In his *Duquette* waiver, Nicholas acknowledged that he waived his right to trial by jury in the first instance, that he understood he was waiving his right to confront, cross-examine and call witnesses on his own behalf, and that he waived his right to de novo appeal of the finding and sentence should the court, after a hearing, determine that he had violated a condition of the continuance.

level even in the face of a *Duquette* waiver. Even if a panel could overrule a prior decision of this court in these circumstances, which we cannot do, we would not overrule *Roberts.* Assuming a valid *Duquette* waiver, there is no reason not to apply the *Roberts* holding to first tier admissions, and we so hold.

The more serious issues raised by Nicholas are whether the facts before the federal sentencing judge were adequate to conclude that there was a valid *Duquette* waiver and whether the record establishes an admission or finding of guilt in the state proceeding.

On the first issue, Nicholas argues that a copy of the *Duquette* waiver was not before the district court and the waiver (which was provided by the government to this court) in any event did not include a written stipulation of facts.

The first argument is thwarted by explicit references to the *Duquette* waiver in the PSR. We need not and do not refer to the copy of the waiver provided to us and do not reach the issue of whether it was properly submitted. *Cf. Williams v. Poulos,* 11 F.3d 271, 280–81 (1st Cir.1993). The PSR stated, without objection, that "Nicholas signed a *Duquette* Waiver acknowledging that he waived a trial by jury in the first instance, that he waived his right to confront and cross-examine witnesses and to call witnesses on his own behalf, and that he waived his right to a de novo appeal...." In response to Nicholas's objection to being placed in criminal history category II, the addendum to the PSR elaborated that:

> The Probation Office believes that the *Duquette* Waiver signed in this case provides the Court with the proof required to show that the defendant's admission was entered with the formalities and finality of a guilty plea, thus making the case a countable diversionary disposition. The Waiver gives notice of important rights. · Most importantly, the defendant waived his right to a de novo appeal.... The effect of this waiver is to give the finality of a second-tier admission to sufficient facts to one entered at the first tier. This Waiver

is signed by the defendant, defense counsel, the prosecutor, and the judge.

Thus, while the district court did not have the text of the waiver before it, the waiver was noted and extensively discussed in the PSR.

■ Nicholas's second argument, that the waiver itself did not have attached a copy of the written stipulation, was not presented to the district court in the sentencing hearing. Given our disposition, we pass over the question of whether the issue may now be properly raised on appeal. The matter of whether the issue is properly presented is not straightforward, for it is the government which had the burden of "showing whatever facts are needed to justify" adding additional criminal history points. *Roberts,* 39 F.3d at 13.

On appeal Nicholas claims, and the government concedes, that a police report setting out the facts of the case was not appended to the *Duquette* waiver.[6] Nicholas argues that there are two reasons this anomaly should overcome a presumption that the proper procedures were followed: first, Nicholas's waiver itself states that a "police report or stipulation of facts" is attached, and second, *Duquette* requires that "[w]hen the defendant admits to sufficient facts, those facts should be formalized in written stipulations which can then be filed with the papers in the case." *Duquette,* 438 N.E.2d at 342.

Once the government has proved the details of the Massachusetts first tier procedure "by showing a regular course of practice in first-tier proceedings," the defendant is then left to contradict the government by offering "evidence that the general practice was not followed in his case and that what happened to him was inadequate to constitute an admission of guilt." *Roberts,* 39 F.3d at 13. Nicholas's attempt to cast doubt on the prior state court proceedings is telling in its omissions. Nicholas has not offered any proof that there was no colloquy between Nicholas and the state court judge or that

---

**6.** The government says it was the practice in the Massachusetts district courts to give the police report to defense counsel but not necessarily to keep it in the court file.

the stipulation of facts (while not appended to the waiver) was in any way false.

*Duquette* requires that a stipulation of facts be formalized in writing. While this writing "can then be filed with the papers in the case," such filing does not appear to be mandatory under *Duquette*. A stipulation of facts was formalized into writing in this case. The fact that the stipulation was not appended to the waiver is not sufficient to cast doubt on the veracity of the waiver itself. Nicholas offers us no substantial reason to doubt that the state court followed the proper procedures when the waiver was executed.

Nicholas's last argument is that the state court proceedings did not establish a "finding or admission of guilt" as required under U.S.S.G. § 4A1.2(f). Nicholas argues that the district court erroneously conducted an inquiry into the facts of the underlying case and made an independent finding of guilt. If that were what the district court did, Nicholas would have a good argument. The Guidelines favor more categorical approaches. *See Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Damon*, 127 F.3d 139 (1st Cir.1997).

But as we read the record, the district court determined that Nicholas had admitted guilt in open court and that there was a judicial determination by the state court judge of facts sufficient to support a finding of guilt. That is sufficient under the Guidelines.

*Affirmed.*